**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.T.-S. and A.T.-A.**

**No. 21-0544** (Boone County 20-JA-28 and 20-JA-29)

**MEMORANDUM DECISION**

Petitioner Mother A.T., by counsel Elliott E. Workman, appeals the Circuit Court of Boone County's June 8, 2021, order terminating her parental rights to A.T.-S. and A.T.-A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, L. Scott Briscoe, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her improvement period and without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2020, the DHHR filed a child abuse and neglect petition against petitioner and C.A., the father of A.T.-A., alleging unsanitary and unsafe living conditions and that the parents neglected the children's hygienic needs. Specifically, the DHHR workers observed the home to be in a filthy and deplorable state with animals' feces and urine on the floors, bags of trash sitting around, dirty dishes covered with rotten food, and a massive cockroach infestation. The parents failed to properly refrigerate their food, resulting in foods within the pantry containing cockroaches. The bottom of the refrigerator was black with various insects and filth. Workers found ant infestations in the children's rooms and dog feces on the children's beds. One worker observed a dog urinate on the children's clothing. The workers also noted safety issues with general

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

junk piles on the home's porch and that a portion of the floor inside the home had caved in. The DHHR implemented a safety plan for several months, which included services such as adult life skills and parenting classes, but the parents failed to clean the home and remove the unsafe and unsanitary conditions. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in May of 2020 and adjudicated petitioner as an abusing parent. The court granted petitioner a post-adjudicatory improvement period, the terms of which required petitioner to leave her relationship with C.A., complete parenting and adult life skills classes, learn to budget and manage limited income, complete a parental fitness and psychological evaluation, and obtain independent and appropriate housing for the children. At a review hearing in July of 2020, the guardian moved to revoke petitioner's improvement period citing petitioner's continued relationship with C.A., but the circuit court continued petitioner's improvement period.

In September of 2020, the circuit court held a dispositional hearing, during which the DHHR worker testified that C.A.'s parental rights to other children had been previously terminated due to severe medical neglect and deplorable living conditions in the home, and, as such, the DHHR recommended the termination of his parental rights to A.T.-A. Further, the worker explained that due to these circumstances, petitioner was required to cease her relationship with C.A. and move out of his home. The worker stated that petitioner had not "stayed away from [C.A.]" as several witnesses had reported seeing petitioner and C.A. presented as a couple in the community and that the couple celebrated their anniversary on social media. Yet, petitioner had told the multidisciplinary team members that she had left her relationship with C.A. Further, the DHHR proffered that petitioner recently completed her parental fitness and psychological evaluation and that the results were pending. In light of this, the court continued petitioner's improvement period.

At a review hearing in December of 2020, the DHHR argued that although petitioner had completed some portions of her improvement period, she had not obtained independent housing and relied upon relatives to provide for her basic needs. The court then set the matter for disposition. In March of 2021, the circuit court held a dispositional hearing, wherein the DHHR proffered that petitioner was seen with C.A. the week prior and that petitioner skipped her supervised visitation with the children on March 18, 2021. The parties agreed to subpoena the psychologist to testify as an expert regarding the results of petitioner's parental fitness and psychological evaluation, and the court continued the dispositional hearing.

In April of 2021, the circuit court held a final dispositional hearing. The DHHR worker testified that petitioner continued her relationship with C.A. despite the recent termination of his parental rights to A.T.-A. and the previous termination of his parental rights to other children. The worker stated that in March of 2021, petitioner was seen in the same vehicle as C.A. along with petitioner's grandmother and father, indicating that the couple remained together and continued to act as a family. Pictures of petitioner with C.A. were admitted into evidence. The worker also testified that petitioner failed to obtain appropriate housing, had not exhibited the independent living skills required of her case plan, and needed help with daily caregiving tasks for the children. The worker explained that she visited petitioner's relatives' homes and found that petitioner's mother's home was also too filthy to be safe for reunification and that petitioner's grandmother's

home was inappropriate because the grandmother was also seen in the car with petitioner and C.A. as recently as one month prior to the final dispositional hearing.

Next, Barbara Nelson, a clinical psychologist, testified that petitioner denied all wrongdoing, minimized the severity of the deplorable conditions of the home, and stated that the DHHR wrongfully removed her children. Petitioner told Mrs. Nelson that she did not believe children should be removed unless they had been beaten or starved. Mrs. Nelson further stated that petitioner has never lived on her own and is entirely reliant upon others. She stated that petitioner makes poor decisions, acts upon impulse, and has intellectual deficits. As such, Mrs. Nelson gave petitioner an extremely poor prognosis for obtaining minimally adequate parenting abilities. Petitioner did not testify but moved for a less-restrictive alternative disposition such as permanent legal guardianship of the children with relatives. However, the court denied the motion finding that petitioner continued to put her relationship with C.A. above the needs of the children and that guardianship was not warranted. The court noted that it would not terminate "someone's parental rights based solely on a parental fitness exam with a low IQ and an inability to read," but this information coupled with petitioner's failure to do "one simple thing"—stay away from C.A.— led the court to believe that termination was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights by order entered on June 8, 2021. Petitioner appeals this dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with the terms and conditions of her improvement period. Specifically, petitioner contends that she completed parenting and adult life skills classes and exercised supervised visitations with the children. Petitioner argues that the circuit court terminated her parental rights based upon intellectual limitations combined with evidence suggesting that she continued to have a relationship with C.A. According to petitioner, the "most

---

[2]The fathers of A.T.-A. and A.T.-S. had their parental rights terminated. The permanency plan for the children is adoption by their relative foster family.

damaging evidence against" her was Mrs. Nelson's testimony that she was "unable to learn and adapt to situations."

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Contrary to petitioner's argument, the "most damaging evidence" against her included that she continued her relationship with C.A. throughout the proceedings, attempted to hide that fact from the parties and the court, and chose to stay in a relationship with C.A. while knowing that the children could not be reunified with her if she remained in a relationship with him. The evidence presented below showed that C.A. was a serious threat to A.T.-A. and A.T.-S. given the prior termination of his parental rights to other children for the same conditions of abuse and neglect. Additionally, petitioner was required to obtain appropriate and independent housing, but she failed to do so by the final dispositional hearing. As testified to by the DHHR worker, because petitioner was unable to live on her own, the worker examined petitioner's relatives' homes and found that they were also filthy or otherwise inappropriate for reunification with the children. As such, petitioner had failed to obtain appropriate housing for herself or appropriate housing with a relative. Finally, although the circuit court considered Mrs. Nelson's testimony at the final dispositional hearing, the court specifically stated that it relied heavily upon petitioner's failure to stay away from C.A. and noted that petitioner chose her relationship with C.A. over the needs of the children. Accordingly, the evidence supports a finding that petitioner did not successfully complete the terms of her improvement period.

For the same reasons, we find no error in the circuit court's termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

4

As previously discussed, the record clearly establishes that petitioner failed to respond to or follow through with the most important aspects of her improvement period and family case plan—cease contact with C.A. and obtain independent and appropriate housing for the children. Therefore, this evidence supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. We further find that termination was necessary for the children's welfare, given petitioner's refusal to leave her relationship with C.A., a person who was a threat to the children's health and welfare.

Finally, insomuch as petitioner argues that she was entitled to a less-restrictive dispositional alternative such as permanent guardianship with relatives, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the evidence set forth above, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton